IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
MARCH 17, 2004 Session

# STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. JULIE ANN TAYLOR & BRIAN K. TAYLOR
## IN THE MATTER OF S.A.T. & B.K.T., CHILDREN UNDER EIGHTEEN YEARS OF AGE

### Direct Appeal from the Juvenile Court for Wayne County
No. 7422     James Ross, Judge

_____

### No. M2003-01680-COA-R3-PT - Filed April 29, 2004

_____

This case involves the termination of Mother's and Father's parental rights to their children, though only Mother appeals the decision of the Juvenile Court. After conducting a hearing, the lower court found that there was clear and convincing evidence to terminate Mother's parental rights on the bases of persistent conditions, noncompliance with the permanency plan, and abandonment. On appeal, Mother challenges each of the three grounds given for termination. For the following reasons, we affirm the ruling of the trial court.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Josh K. Polk, Waynesboro, TN, for Appellant

Paul G. Summers, Attorney General and Reporter, Dianne Stamey Dycus, Deputy Attorney General, Nashville, TN, for Appellee

### OPINION

### Facts and Procedural History

Julie Taylor ("Mother") and Brian Taylor ("Father") are the parents of two minor children, S.T. and B.T. (collectively, "Children"). On June 28, 2000, the Tennessee Department of Children's Services ("DCS") received a report that Father was beating S.T. at the Taylors' residence. In response, a DCS representative, accompanied by local law enforcement officials, went to the residence that evening to conduct an investigation. The DCS investigation revealed numerous

conditions that led to the filing of a petition for dependency and neglect and the placement of Children into state custody. Specifically, the DCS representative found that Father had struck S.T. across the face, Father and Mother used drugs and alcohol in front of the Children, neither parent possessed a driver's license, the family had just been evicted from their home, and the Children had endured periods of homelessness and hunger while in their parents' custody. The DCS representative was also told by S.T. that Father had engaged in inappropriate sexual contact and that Mother, though aware of this conduct, had done nothing about it.

After Children were placed in state custody, a DCS family case manager met with Mother and Father to develop a permanency plan, which sets forth goals for parents to achieve in order to recover custody of their children. In the plan signed by the Taylors, Mother agreed to procure and maintain appropriate housing and stable employment, to obtain a driver's license, to attend parenting classes, and to participate in an alcohol and drug assessment. Over the first six months, Mother visited the Children with some regularity, averaging three to four visits a month. In the spring and summer of 2001, however, the visits became less frequent. Beginning in November 2001, when Husband and Wife moved to Ohio, the visits stopped almost entirely, with the parties visiting the Children only twice over the period of a year.

During this time, Wife failed to comply with any of the requirements set forth in the permanency plan. She was employed only intermittently, working for a few months at a manufacturing company in Collinwood, Tennessee and as a grocery store cashier in Ohio. Wife also moved at least four times during this period, including moves to and from her family's residence in Ohio. At the time of trial, Wife resided in Adamsville, Tennessee, where she had lived for two months, working approximately eight hours a week folding shirts. In addition, Wife failed to complete parenting classes, never obtained a driver's license, and did not attend a drug and alcohol assessment.

Due to Mother's lack of progress and the need to integrate the Children into a stable and permanent home, DCS filed a petition to terminate Mother's and Father's parental rights to the Children on July 22, 2002. After a hearing on January 10, 2003, the trial court terminated the parental rights of both Mother and Father. Mother timely appealed the ruling to this Court and now raises the following issue, as we perceive it, for our review:

> Whether the trial court erred when it found that DCS had proven grounds for termination by clear and convincing evidence

## Standard of Review

This case was tried by the lower court sitting without a jury. Consequently, our review of the trial court's findings of fact is *de novo* upon the record, with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 569 (Tenn. 2002). With respect to the lower court's conclusions of law, our review is *de novo*, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569.

## Law and Analysis

In order to terminate parental rights, the trial court must find, by clear and convincing evidence, that one of the grounds for termination exists and that the termination of parental rights is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c) (2001). "Clear and convincing" evidence has been defined as "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). In the present case, the lower court found that three grounds for termination had been established by clear and convincing evidence: (1) substantial noncompliance with the requirements of the permanency plan, (2) persistence of the conditions that led to the removal of the Children, and (3) abandonment by token visitation and non-support. The trial court also found that termination of Mother's parental rights was in the best interest of the Children. Mother challenges the lower court's finding that DCS adduced clear and convincing evidence to establish these grounds. We note that any of the three grounds given by the trial court may serve as an independent and adequate basis for termination of parental rights. *Id*. (citing *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000)). As such, Mother must demonstrate that DCS failed to carry its burden of proof as to each ground for termination, if she is to prevail in her appeal. We will address each basis for termination, as well as the factors determining the best interest of the Children, in turn.

### Substantial Noncompliance with the Permanency Plan

Tenn. Code Ann. § 36-1-113(g)(2) provides that termination of parental rights may be based upon "substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan." In order to base termination upon this ground, the trial court must find, as an initial matter, that the responsibilities enumerated in the permanency plan "are reasonable and are related to remedying the conditions which necessitate foster care placement." Tenn. Code Ann. § 37-2-403(a)(2)(C)(2001). The trial court must then determine whether the noncompliance is substantial. In making this determination, the lower court must measure "the real worth and importance of noncompliance . . . by both the degree of noncompliance and the weight assigned to that requirement." *Id*. at 548.

In the present case, the trial court found that the responsibilities set forth in the permanency plan for Wife were reasonable and related to remedying the conditions that necessitated foster care placement. In addition, it found that Mother's noncompliance with these responsibilities was substantial. Having reviewed the record, we find no error in the lower court's determination. The Children were placed in state custody largely because of both parents' drug and alcohol use, their financial instability, and their intermittent homelessness. The responsibilities outlined in Mother's permanency plan- securing and maintaining stable employment and housing, attending parenting classes, obtaining a driver's license, and attending an alcohol and drug assessment- are all reasonable means of remedying these conditions. Further, there was indisputable evidence presented at trial indicating that Mother failed to comply with any of the requirements enumerated in the permanency

plan. Mother admitted that she had moved numerous times while the Children were in foster care and that she was unable to secure stable, continuous housing and employment. She further testified that she never attended an alcohol and drug assessment, though she was provided with the necessary contact information, nor did she complete the necessary parenting classes. Finally, it is undisputed that Mother still lacks a valid driver's license, despite the requirement set forth in the permanency plan. Taken as a whole, the testimony and evidence presented at trial support the trial court's determination that grounds for termination of Mother's parental rights exist, based upon her substantial noncompliance with the permanency plan. Accordingly, we find no error with this determination. As we noted earlier, in order for a court to terminate parental rights, it only needs to find that *one* of the statutory grounds for termination exists. Consequently, we decline to address the lower court's determination with respect to persistent conditions and abandonment.

## Best Interests of the Children

Finally, in addition to finding a ground for termination by clear and convincing evidence, a trial court must also find that such termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c). In making this determination, the trial court must consult the relevant statutory guidelines:

> (i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

The trial court found that termination of Mother's parental rights is in the best interest of the Children. We agree. It is apparent from the record that Mother has not made any adjustment in her circumstances that would make it safe and in the Children's best interest to live with her again. She still has no regular stable employment, nor has she shown an ability to maintain appropriate housing for any appreciable period. Mother's visitation was sporadic, with an entire year passing in which she visited the Children only twice. Further, from the record it appears that Mother is still married to and cohabiting with Father, who has a history of abusing one of the Children, as well as consuming alcohol and drugs in their presence. There is no indication that he has changed these tendencies. Indeed, he was sufficiently unconcerned with regaining custody of the Children that he failed to even make an appearance to contest the termination of his parental rights. After reviewing the record in light of the statutory factors, it seems clear that the trial court did not err by finding that termination of Mother's parental rights is in the Children's best interest.

## Conclusion

For the foregoing reasons, we affirm the ruling of the trial court. Costs of this appeal are taxed to the Appellant, Julie Taylor, and her surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE